IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY L. GEORGALIS INDIVIDUALLY AND D/B/A IT'S ALL GREEK TO ME | § § § § § § § § § § § | |
| Plaintiffs, | | Case No. 3:23-cv-01682-B |
| v. | | |
| STATE FAIR OF TEXAS | | |
| Defendant. | | |

## TOMMY L. GEORGALIS INDIVIDUALLY AND D/B/A IT'S ALL GREEK TO ME'S FIRST AMENDED COMPLAINT

Plaintiff Tommy L. Georgalis ("Georgalis'"), individually and d/b/a It's All Greek To Me (collectively with Georgalis, "Plaintiffs") file this First Amended Complaint against Defendant, the State Fair of Texas (the "Fair" or "Defendant"), and in support thereof, respectfully shows as follows:

### JURISDICTION & VENUE

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Specifically, Plaintiffs assert claims pursuant to the Civil Rights Act 1866, as amended by 42 U.S.C. §1981. Thus, jurisdiction is proper in this Court.

2. The Dallas Division of the Northern District of Texas encompasses Dallas County, Texas. *See* 28 U.S.C. §124. This case was originally filed in the 134th Judicial District Court in Dallas County, Texas, and Defendant removed the case to this Court on or about July 28, 2023.

## PARTIES

3. Plaintiff Tommy L. Georgalis owns It's All Greek To Me and is a Texas resident.

4. The Fair is a nonprofit corporation formed and existing under the laws of the state of Texas. It has appeared herein.

## FACTUAL BACKGROUND

5. Georgalis is of Greek ancestry. He immigrated from Greece to the United States.

6. Georgalis has been a concessionaire at the Fair since 1989.

7. The Fair begins each year in late September or early October and operates for approximately one month.

8. The Fair's website represents that absent some change in status, concessionaires can expect a "right of first refusal" before the next year's fair season:

### 2023 FOOD AND BEVERAGE APPLICATION

Availability for concessions space is limited. Prior-year concessionaires, in good standing, are usually given first right of refusal. New applicants are selected based on uniqueness of product, appearance of display, and references from other fairs or events. **To apply online click the button below.** For more information, contact concessions@bigtex.com.

**CLICK HERE FOR THE APPLICATION**

9. Each spring, in or around March or April, the Fair enters into signed contracts with concessionaires. The terms of these contracts begin when executed and expire at the conclusion

of the Fair each October. Thereafter, the parties are governed by the terms contained on the Fair website (above), as well as any verbal, written, or other acts made between November and March the next year.

10. In addition to the "first right of refusal," the Fair openly allows concessionaires the right to buy, sell, and transfer booths. Plaintiffs are aware of many such instances in the recent past that Fair executives have directly or indirectly approved of concessionaires of non-Greek ancestry who were allowed to buy, sell, or transfer their booth.

11. For example, other booths which were run or owned by those who are not of Greek ancestry that were allowed to buy, sell, or transfer their booths include: Stifflers, Stubby's Cinnamon Roll, Pedro's Tamales, Smokey John's BBQ, Magnolia Beer and Garden, and Nevins Concessions.

12. Plaintiffs' booth is located inside the Tower Building Food Court at the Fair.

13. Upon information and belief, Plaintiffs' booth, It's All Greek To Me, was the only Greek-themed booth in the Pavilion Tower at the Fair and the only both owned by an individual of Greek ancestry.

14. Plaintiffs' booth has consistently received media praise and awards such as D Magazine's "Recommendations for Healthy Food at the State Fair", the Hockaday School's student newspaper's "Eating Healthy at the State Fair", and Serious Eats's "25 Best Eats at the State Fair".

15. Plaintiffs' sales are exemplary and consistent with the praise above. For the 2022 State Fair, according to the Fair's own statements, Plaintiffs' sales ranked 25 out of 51 concessionaires with a single booth. During that same period, Plaintiffs' sales ranked 15 out of 28

Case 3:23-cv-01682-B   Document 4   Filed 08/25/23   Page 4 of 10   PageID 75

booths within the Tower Building Food Court. Other concessionaires that were not of Greek ancestry were ranked lower and, yet, received renewed licenses for the 2023 season.

16. The Fair directly benefits and shares in the revenue from the Plaintiff's booth.

17. Despite 35 plus years of serving the Fair and its guests, the Fair has a recent history of treating Plaintiffs differently than other concessionaires.

18. In 2015, eight concessionaires, including Plaintiffs, received citations from the Texas Alcohol and Beverage Commission ("TABC") on the Friday before Texas/OU weekend. However, Plaintiffs were the "only" concessionaire that the Fair required to shut down during Texas/OU weekend. The TABC subsequently dismissed in full the citation and informed Plaintiff Georgalis that he had an "enemy" within the Fair who was "out to get them." Upon information and belief, none of the booths that were allowed to continue to operate were owned by individuals of Greek ancestry.

19. Plaintiffs made multiple requests for an additional booth from the Fair between 1990-2023. Despite repeated requests for a second booth, and assurances by Fair officials that they were eligible for a second booth, Plaintiffs did not receive one.

20. During this same time (1990-2023), Plaintiff Georgalis routinely submitted new menu item requests to the Fair, attempting to add new sources of revenue to his booth. Plaintiffs submitted at least eight (8) such requests. Melanie Linnear, on behalf of the Fair, denied each and every such request she received by the Plaintiffs. Despite this, Plaintiffs were able to override her denials in a few instances by appealing to then Vice President of Food Service, Carey Risinger, who was baffled by and expressed concern with the denials.

21. Beginning in 2012, the Fair prohibited any booths other than Fletcher's to sell corn dogs. Plaintiffs' corn dog sales had previously accounted for 25% of its sales. In 2019, the Fair

#101591769v4

Plaintiffs' First Amended Complaint
Page | 4

reversed its prohibition, but Melanie Linnear singled out and refused to allow Plaintiff Georgalis the option of carrying corn dogs in his booth, even though she allowed other concessionaires, who were not of Greek ancestry, to do so.

22. On February 6, 2023, the Fair emailed Plaintiffs requesting that they complete an attached application to renew his booth for the 2023 State Fair.  As was usual, Plaintiffs timely complied with this request.

23. At or around that same time, Plaintiffs were asked to participate in a "Talk Back" meeting with Melanie Linnear, now holding the position of Vice President of Food Service, and Callie Nolen, her assistant. Talk Back meetings (a new practice by the Fair since 2021) were conducted in 2021 to recap the year's sales rankings, other metrics, to allow the parties to raise in an open and non-retaliatory manner any requests or concerns, and to make preparations for the next State Fair of Texas.

24. During the Talk Back meeting, Melanie Linnear noted the Plaintiffs' increase in sales from 2021 to 2022 and then allowed Plaintiffs an option to speak.  At that time, Plaintiffs reiterated their frustration that they had yet to receive a second booth from the Fair. In response, Melanie Linnear said, "Okay Tom, so you want another booth. Callie, make a note of this and make sure he receives an application for an additional location at this year's Fair."

25. Melanie Linnear had a history of treating Plaintiffs disparately. Despite that and former leadership knowing Ms. Linnear's history of discriminatory treatment of Plaintiffs, Ms. Linnear was elevated to the topmost position in 2022, with the means to act upon her animus towards Plaintiffs and deny Plaintiffs a booth.

26. Callie Nolen eventually confirmed the timely receipt of all the Plaintiff's paperwork.

27. On April 19, 2023, Plaintiffs received in the mail a letter dated March 28, 2023 notifying the Plaintiffs that the Fair was taking the booth away from Plaintiffs—refusing to extend the right of first refusal promised by the Fair and not extending a contractual agreement for the 2023 State Fair of Texas.

28. Since that time, the Plaintiff Georgalis has repeatedly requested an explanation from the Fair as to why his booth has been taken away, why he was not extended a "first right of refusal," although Plaintiffs remained in good standing with the Fair, and why he was not given an opportunity to sell or transfer his booth (as other concessionaires of non-Greek ancestry had been allowed to do for profit). The Fair has repeatedly refused to provide a single explanation at all or address the reason for this change.

29. In reliance on the Fair's representations outside of the term of the contract with the Fair, the representations made on the Fair website, and the statements and actions of Fair officials, Plaintiffs incurred expenses in preparation of State Fair of Texas 2023.

30. Importantly, as of the date that Plaintiffs filed their original petition in Texas state court, the Fair had failed and refused to provide any reason for refusing to renew Plaintiffs' license for the 2023 season.

31. The Plaintiffs reliance was reasonable.

## CAUSES OF ACTION

**A.    Claim 1: Fraud**

32. Plaintiffs re-allege and incorporate all allegations set forth above.

33. During the "Talk Back" meeting, the Fair represented to Plaintiffs that Plaintiffs would return to State Fair of Texas 2023.

34. Plaintiffs' reliance on the Fair's representations about future seasons and additional booth space was reasonable as Plaintiffs had received a booth for the past 35 years.

35. Plaintiffs were damaged as a result of the Fair's representations. Specifically, Plaintiffs incurred expenses to prepare for the 2023 fair season.

36. The Fair knew or should have known that the representations were false, and that Plaintiffs should not rely on the Fair's representations and the Fair intended for Plaintiffs to rely on the Fair's representations.

### B.     Claim 2: Promissory Estoppel

37. Plaintiffs re-allege and incorporate all allegations set forth above.

38. Defendant's conduct towards Plaintiffs indicated a promise made to return the Plaintiffs to the State Fair of Texas 2023 and a promise for a second booth location.

39. The Fair contract with concessionaires ends each October. The Fair acknowledged that the 2022 contract expired in October 2022 and that its terms do not control after that date.

40. The Plaintiffs participated in a Talk Back meeting with State Fair personnel. During the Talk Back meeting on March 2, 2023, Melanie Linnear and Callie Nollen made statements asserting that the Plaintiffs were going to be included in State Fair of Texas 2023 and would be provided with an additional booth at the Fair.

41. But for the representations on the State Fair of Texas website and these promises, Plaintiffs would not have purchased supplies and equipment in preparation for State Fair of Texas 2023.

42. Plaintiffs reasonably and substantially relied on Defendant's promise. It was reasonable to rely on the promise because Defendant renewed Plaintiffs' contracts for years, the Fair had emailed Plaintiffs a renewal application, and Fair officials had discussed adding an additional booth for Plaintiffs in 2023 and sent them paperwork to complete for that booth.  But for the promise to renew their contract, Plaintiffs would not have purchased the products they did.

43. Defendant should have foreseen that Plaintiffs would interpret a request to complete an application for State Fair of Texas 2023 as a guarantee and assurance that Georgalis was going to have a booth at the Fair. Additionally, the added request by the Fair to complete and sign an application for a second booth, was likewise a guarantee.

44. Injustice to Plaintiffs can only be avoided if Defendant give the Plaintiffs a booth in 2023 and/or adequately compensate them for the lost revenue or booth sale/transfer value caused by the Fair's improper actions.

**C. Claim 3: Discrimination, 42 U.S.C. § 1981**

45. Plaintiffs re-allege and incorporate all allegations set forth above.

46. Plaintiffs allege Defendant violated the Civil Rights Act of 1866 as amended by 42 U.S.C. § 1981.

47. Plaintiffs are members of a protected class under 42 U.S.C. § 1981 based on their Greek ancestry.

48. Defendant intentionally discriminated against Georgalis based on his Greek ancestry.

49. Plaintiffs' applications to add Greek food items to their existing menu were often denied while other concessionaires, who were not of Greek ancestry, received approval to sell similar items.

50. Further, when Plaintiffs followed up on their requests for an additional booth, they were told that it was forthcoming on multiple occasions. Subsequently, however, available booths would be given to other concessionaires of non-Greek ancestry. Fair officials even gave concessionaires who were not of Greek ancestry the right to have booths outside the Tower Building Food Court that would sell Greek food items the Plaintiffs first suggested and submitted menu applications to Fair officials for (such as outdoor souvlaki).

51. Plaintiffs were not allowed to add foot-long corn dogs to their menu even after the food item had been approved for other concessionaires, who were not of Greek ancestry, to sell.

52. Plaintiffs were the only concessionaire shut down during TX/OU weekend while other concessionaires with similar offenses, who were not of Greek ancestry, were allowed to operate.

53. Lastly, Plaintiffs were not permitted to sell or transfer their booth while other concessionaires, who were not of Greek ancestry, were allowed same.

54. These actions, taken together, highlight Defendant's intent to impair Plaintiffs' sales and disparately discriminate against them.

55. Defendant discriminated against Plaintiffs in violation of § 1981 by treating them less favorably than others similarly situated. Defendants have produced not one response or explanation for the taking of their booth. Any response given is simply a pretext for the real reason, which is discrimination based on their Greek Ethnicity.

## ATTORNEYS' FEES

56. Plaintiffs retained the undersigned counsel to represent them in this action and have agreed to pay the undersigned counsel reasonable and necessary attorneys' fees. Plaintiffs are entitled to its reasonable and necessary attorneys' fees as authorized by 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs TOMMY L. GEORGALIS INDIVIDUALLY AND D/B/A IT'S ALL GREEK TO ME pray for judgment on their Original Petition and that this Court enter judgment against State Fair of Texas as follows:

a) actual damages in an amount according to proof;

b) attorneys' fees incurred through the trial and appellate levels, as allowed by statute and/or statute;

c)  expenses and costs of court incurred through the trial and appellate levels, as allowed by contract and/or statute;

d)  pre-judgment and post-judgment interest at the highest rates permitted by law; and

e)  all other relief both at law and in equity, as this Court deems appropriate.

Dated: August 25, 2023

**JONES WALKER LLP**

*/s/ Nickolas Spiliotis*

Nickolas Spiliotis (Bar No. 24033092)
811 Main Street, Suite 2900
Houston, Texas 77002
Tel: 713-437-1800
Fax: 713-437-1917
nspiliotis@joneswalker.com

-AND-

Amy K. Anderson (Bar No. 24007064)
5960 Berkshire Lane, 6th Floor
Dallas, Texas 75225
Tel: 214-459-9682
Fax:  214-459-9415
aanderson@joneswalker.com

*Counsel for Plaintiffs Tommy L. Georgalis individually and d/b/a It's All Greek To Me*