UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMY L. GEORGALIS, individually and d/b/a IT'S ALL GREEK TO ME | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:23-CV-1682-B |
| STATE FAIR OF TEXAS, | § § | |
| Defendant. | § § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant State Fair of Texas (the "State Fair")'s Motion to Dismiss Plaintiff Tommy L. Georgalis, individually and d/b/a It's All Greek to Me ("Georgalis")'s First Amended Complaint (Doc. 7). For the following reasons, the Court **GRANTS** the State Fair's Motion and **DISMISSES** the First Amended Complaint **WITHOUT PREJUDICE**.

## I.

## BACKGROUND

Georgalis has operated a food booth at the Texas State Fair ("Fair") for 35 years. Doc. 4, Am. Compl., ¶ 17. However, in 2023, Georgalis and his booth were not invited back to the Fair. *Id.* ¶ 27. This case is about the State Fair's refusal to contract with Georgalis to operate his booth at the 2023 Fair.

Georgalis is of Greek ancestry. *Id.* ¶ 5. After he immigrated from Greece to the United States, Georgalis worked as a concessionaire at the Fair, which is a one-month-long event that takes place in the fall of each year. *Id.* ¶¶ 5–7. In this role, Georgalis owned and operated a food booth, It's All Greek To Me. *Id.* ¶¶ 3, 13. "It's All Greek To Me, was the only Greek-themed booth

in the Pavilion Tower at the Fair and the only bo[o]th owned by an individual of Greek ancestry." *Id.* ¶ 13.

Concessionaires, such as Georgalis, enter into yearly contracts with the State Fair to operate their booths. *Id.* ¶ 9. The process begins in the spring of each year when concessionaires submit applications to the State Fair; the State Fair then contracts with the concessionaires it selects from the pool of applicants. *Id.* ¶¶ 8–9, 22. When selecting new applicants, the State Fair considers the "uniqueness of product, appearance of display, and references from other fairs or events." *Id.* ¶ 8. However, according to the State Fair's website, "[p]rior-year concessionaires, in good standing, are usually given a right of first refusal." *Id.* After the Fair is complete, the contract between the State Fair and each concessionaire ends, and the cycle begins again. *Id.* ¶¶ 8–9. Georgalis had successfully sought and obtained a contract to operate his booth every year from 1990 to 2022. *See id.* ¶¶ 17, 19.

Georgalis claims that, in 2015, the State Fair began treating him differently than other concessionaires. *See id.* ¶¶ 17–18. In that year, Georgalis and seven other concessionaires were cited by the Texas Alcohol and Beverage Commission ("TABC") the Friday before the "Red River Rivalry," the annual football game between the University of Texas and the University of Oklahoma played at the Cotton Bowl, which is located on Fair grounds.[1] *Id.* ¶ 18. The State Fair forced Georgalis to close his booth for the weekend as a result. *Id.* Georgalis alleges that no other concessionaire was forced to cease its operations that weekend, even though others had also been cited by TABC. *Id.*

---

[1] The unranked Longhorns beat the #10-ranked Sooners 24-17 that year. Tim Daniels, *Oklahoma vs. Texas: Score, Highlights and Reaction from 2015 Red River Rivalry*, BLEACHER REPORT (Oct. 10, 2015), https://bleacherreport.com/articles/2577846-oklahoma-vs-texas-score-highlights-and-reaction-from-2015-red-river-rivalry.

According to Georgalis, the State Fair continued to treat Georgalis poorly after this incident. *See id.* ¶¶ 19–21. For example, Georgalis made several requests to open a second booth; however, "[d]espite . . . assurances by [State] Fair officials that [he] [was] eligible for a second booth," the State Fair denied each request. *Id.* ¶ 19. The State Fair instead gave "available booths . . . to other concessionaires of non-Greek ancestry." *Id.* ¶ 50. Georgalis also alleges that the State Fair prohibited him from selling certain food items. *Id.* ¶ 20. According to Georgalis, a State Fair official, Melanie Linnear, denied Georgalis's applications to add new menu items on eight different occasions. *Id.* ¶¶ 20, 49. However, Georgalis was "able to override [Linnear's] denials in a few instances by appealing to then Vice President of Food Service, Carey Risinger, who was baffled by and expressed concern with the denials." *Id.* ¶ 20. Linnear also "singled out and refused to allow . . . Georgalis the option of carrying corn dogs in his booth, even though she allowed other concessionaires, who were not of Greek ancestry, to do so." *Id.* ¶ 21.

In February 2023, the State Fair emailed Georgalis an application to renew his booth for the upcoming Fair and invited him "to participate in a 'Talk Back' meeting with . . . Linnear, now holding the position of Vice President of Food Service, and Callie Nolen, her assistant." *Id.* ¶¶ 22–23. "Talk Back meetings . . . were conducted . . . to recap the year's sales rankings, other metrics, to allow the parties to raise in an open and non-retaliatory manner any requests or concerns, and to make preparations for the next State Fair of Texas." *Id.* ¶ 23.

Georgalis agreed to participate in the Talk Back meeting. *See id.* ¶ 24. "During the Talk Back meeting, Linnear noted . . . [Georgalis's] increase in sales from 2021 to 2022." *Id.* In 2022, Georgalis's "sales ranked 25 out of 51 concessionaires with a single booth. . . . [and] 15 out of 28 booths within the Tower Building Food Court." *Id.* ¶ 15. At the Talk Back meeting, Georgalis "reiterated [his] frustration that [he] had yet to receive a second booth from the Fair." *Id.* ¶ 24. In

response, Linnear instructed her assistant to "make a note of this and make sure [Georgalis] receives an application for an additional location at this year's Fair." *Id*. Georgalis contends that "[d]uring the 'Talk Back' meeting, the [State] Fair represented to [him] that [he] would return . . . [in] 2023" and "be provided with an additional booth." *Id*. ¶¶ 33, 40.

In April 2023, Georgalis was informed that he would not be offered a contract for the 2023 Fair. *Id*. ¶ 27. According to Georgalis, "[o]ther concessionaires that were not of Greek ancestry" had lower sales rankings than him in 2022 yet were offered a contract to return in 2023. *Id*. ¶ 15. Although "Georgalis has repeatedly requested an explanation from the [State] Fair as to why his booth has been taken away," no explanation has been given. *Id*. ¶ 28.

After he learned that his contract was not being renewed, Georgalis asked the State Fair for permission to sell his booth. *Id*. While the State Fair had, in the past, approved the sale or transfer of booths that were operated by "concessionaires of non-Greek ancestry," it denied Georgalis's request to sell his booth without explanation. *Id*.

On June 23, 2023, Georgalis sued the State Fair for refusing to renew his contract. *See* Doc. 1, Ex. B., Pet. Georgalis's First Amended Complaint brings claims for race discrimination under 42 U.S.C. § 1981, fraud, and promissory estoppel. Doc. 4, Am. Compl., ¶¶ 32–55. Specifically, the First Amended Complaint alleges that: (1) the State Fair refused to offer Georgalis a contract for the 2023 Fair because of his Greek ancestry, in violation of § 1981; (2) the State Fair fraudulently represented that Georgalis would return for the 2023 Fair; and (3) Georgalis detrimentally relied on the State Fair's promise that he would return to the 2023 Fair with a second booth. *Id*.

On September 8, 2023, the State Fair moved to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. 7, Mot. The State Fair argues that the First Amended Complaint lacks sufficient factual allegations in support of each cause of action

asserted. *See id.* at 6–25. The State Fair's Motion is fully briefed and ripe for review. The Court considers it below.

## II.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes dismissal of a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotations and alterations omitted).

## III.

## ANALYSIS

The Court concludes that the First Amended Complaint fails to state a claim for relief. Georgalis has not pleaded sufficient facts to support a claim for race discrimination under § 1981, fraud, or promissory estoppel. As such, the Court dismisses the First Amended Complaint without prejudice to allow Georgalis to address the pleading deficiencies identified in this Order.

A.     *Section 1981*

Georgalis asserts a claim for race discrimination against the State Fair under 42 U.S.C. § 1981. Doc. 1, Am. Compl., ¶¶ 45–55. He alleges that the State Fair refused to renew his contract because of his Greek ancestry. *Id.* However, the allegations in the First Amended Complaint do not plausibly establish that, but for Georgalis's race, the State Fair would have offered him a contract. The Court, therefore, concludes that Georgalis has failed to state a claim against the State Fair under 42 U.S.C. § 1981.

Section 1981 codifies the language of the Civil Rights Act of 1866, which was passed "in the aftermath of the Civil War to vindicate the rights of former slaves." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 333 (2020). Towards that end, § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

While the text of § 1981 does not explicitly provide a private right of action, the Supreme Court has long held that such a remedy is implicit in the statute's purpose. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975); *Williams v. Waste Mgmt., Inc.*, 818 F. App'x 315, 325 (5th Cir. 2020). To state a claim for race discrimination under § 1981, "a plaintiff must allege

facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994).

Although the State Fair argues that Georgalis failed to allege sufficient facts in support of each element of his § 1981 claim, *see* Doc. 7, Mot., 6–18, the dispositive issue here is the second element—discriminatory intent.[2]

To properly plead discriminatory intent, a plaintiff must allege "facts that, taken as true, permit the Court to infer 'that race was a but-for cause of his injury.'" *Simmons v. Triton Elevator, LLC*, No. 3:19-CV-1206-B, 2020 WL 7770245, at *3 (N.D. Tex. Dec. 30, 2020) (Boyle, J.) (alteration omitted) (quoting *Comcast Corp.*, 589 U.S. at 333). The test for but-for causation is "whether the outcome would be different but for the protected class [i.e., race]." *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1015 (5th Cir. 2023). "In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Id.* at 1014 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020)).

But-for causation "may be—and commonly is—demonstrated by circumstantial evidence." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017). As relevant here, such circumstantial evidence may include "[a]n allegation that similarly situated non-minorities received better treatment" with respect to rights enumerated in § 1981—here, the right to contract. *Id.* (citing *Crosby v. Kilgore*, 9 F.3d 104, 1993 WL 481800, at *1 (5th Cir. 1993) (unpublished)). Ultimately, however, the inquiry is whether the defendant refused to transact

---

[2] The Court does not decide the sufficiency of the pleadings as to the first and third elements of Georgalis's § 1981 claim.

"because of" plaintiff's race, *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019), and thus it is not necessary, at the pleading stage, to show similarly situated non-minorities were treated more favorably if there are other "'facts, direct or circumstantial, that would suggest [defendant's] actions were based on . . . race.'" *Sanchez v. Chevron N. Am. Expl. & Prod. Co.*, No. 20-30783, 2021 WL 5513509, at *5 (5th Cir. Nov. 24, 2021) (alterations omitted) (quoting *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

Here, Georgalis's pleadings do not plausibly establish that race was the but-for cause of his injury. To begin, Georgalis has not specifically pled that he was similarly situated to the non-Greek concessionaires that were offered contracts in 2023. *See Body by Cook*, 869 F.3d at 387. The only comparison Georgalis draws between himself and the non-Greek concessionaires who received contract renewals is with respect to sales rankings. *See* Doc. 4, Am. Compl., ¶ 15. He claims that "[o]ther concessionaires that were not of Greek ancestry were ranked lower and, yet, received renewed licenses for the 2023 season." *Id.* However, Georgalis has not alleged any facts pertaining to these other concessionaires suggesting they achieved lower sales figures than Georgalis under similar circumstances. *See Coleman v. Kijakazi*, No. 21-10399, 2023 WL 2660167, at *2 (5th Cir. Mar. 28, 2023) ("For a comparator to be similarly situated, however, they must be 'under nearly identical circumstances.'"); *Zinnah v. Lubbock State Supported Living Ctr.*, No. 5:22-CV-035-H, 2023 WL 2468746, at *2 (N.D. Tex. Feb. 15, 2023) (Hendrix, J.). Georgalis has not alleged the locations of their booths on Fair grounds, the size of their booths, the number of years in which they operated at the Fair, the food they sold, or their prior rankings. *Cf. Pullins v. Hancock Whitney Bank*, 512 F. Supp. 3d 647, 659–60 (M.D. La. 2021). In the absence of any such allegations, the Court cannot infer discrimination from the sole fact that "[o]ther concessionaires that were not of

Greek ancestry were ranked lower and, yet, received renewed licenses for the 2023 season." Doc. 4, Am. Compl., ¶ 15; *see Zinnah*, 2023 WL 2468746, at *2.

Nor has Georgalis shown how he compared to these other concessionaires with respect to any other potentially relevant category besides sales. In so doing, Georgalis essentially assumes that no other factor played a role in the State Fair's decision to renew a concessionaire's contract. *Cf. Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 471 (5th Cir. 2016). But such an assumption is not warranted here. The First Amended Complaint indicates that, when selecting new applicants, the State Fair considers the "uniqueness of product, appearance of display, and references from other fairs or events." Doc. 4, Am. Compl., ¶ 8. Georgalis, obviously, was not a new applicant; however, this allegation suggests that the State Fair takes a more holistic approach in selecting concessionaires generally, rather than looking solely to sales figures. *See id*. ¶¶ 6, 8. Under these circumstances, the Court cannot say that the First Amended Complaint supports the conclusion that Georgalis was similarly situated to the non-Greek concessionaires who were offered a contract. *See Chhim*, 836 F.3d at 471; *Body by Cook*, 869 F.3d at 387.

While Georgalis likens his pleadings to those in *Hoyt v. American National Insurance Company*, No. 3:20-CV-545-L, 2021 WL 2823449, at *5 (N.D. Tex. July 6, 2021) (Lindsay, J.), that case is distinguishable. *See* Doc. 8, Resp., 9–10. In *Hoyt*, an African American plaintiff, who was employed as a district manager, brought a § 1981 action against his employer after he was forced to accept a demotion for investing outside of work. 2021 WL 2823449, at *1–2. In his complaint, plaintiff alleged that while he and Caucasian district managers "engaged in the same investment activities outside of work, . . . Defendant only punished [plaintiff] for engaging in such activities that were allegedly prohibited by his employment contract by requiring him to sign an agreement that would result in a demotion and decrease in pay." *Id*. at *5. The district court

concluded that these allegations were sufficient to support a plausible inference "that race was the but-for cause of Plaintiff's injuries because, with respect to district managers pursuing unrelated financial endeavors outside of work, Defendant treats black and white . . . district managers differently in its making and enforcement of employment contracts." *Id.*

In contrast to *Hoyt*, here, Georgalis does not allege that *similarly situated* non-Greek concessionaires were treated more favorably. Whereas the plaintiff in *Hoyt* pleaded that he was the only one punished for engaging in specific conduct even though his white co-workers, who had the same job and engaged in the exact same conduct, were not punished, the only similarity between Georgalis and the other booth operators the Court can glean from the First Amended Complaint is that they were concessionaires. *See Hoyt*, 2021 WL 2823449, at *5. As explained above, while Georgalis generally pleaded that he had better sales figures than some non-Greek concessionaires, he has not alleged any other fact which supports the inference that he was similarly situated to those who received a new contract. Thus, *Hoyt* is inapposite here.

And although it is not necessary to allege that similarly situated non-minorities were treated more favorably in order to survive a 12(b)(6) motion, there are no other allegations in the First Amended Complaint which would suggest the State Fair acted with discriminatory intent in refusing to contract with Georgalis. *See Sanchez*, 2021 WL 5513509, at *5. The only other allegations which remotely bear on the State Fair's intent are four alleged instances of differential treatment that occurred prior to 2023. Doc. 4, Am. Compl., ¶¶ 18–21, 28, 49–53; *see* Doc. 8, Resp., 9–10. First, Georgalis pleaded that he was forced to close his booth for the 2015 Red River Rivalry after he received a citation from the TABC, even though seven other concessionaires—who were not of Greek ancestry—received the same citation and were allowed to operate during the game. Doc. 4, Am. Compl., ¶ 18. Second, he alleged that the State Fair prohibited him from selling certain

food items, although "other concessionaires, who were not of Greek ancestry, received approval to sell similar items." *Id.* ¶ 49. Third, Georgalis complains that he was "not permitted to sell or transfer [his] booth while other concessionaires, who were not of Greek ancestry, were allowed same." *Id.* ¶ 53. Fourth, there are allegations that the State Fair denied Georgalis's requests to operate a second booth, although "available booths would be given to other concessionaires of non-Greek ancestry." *Id.* ¶ 50. Georgalis argues that these instances of differential treatment render plausible the conclusion that the State Fair acted discriminatorily in refusing to renew his contract. Doc. 8, Resp., 9–10. The Court disagrees.

First, that Georgalis was forced to shut down for one weekend in 2015 after he received a TABC citation does little to show that the State Fair acted discriminatorily in 2023 by not renewing his contract. *Cf. Jenkins v. City of Dallas,* No. 3:22-CV-0960-B, 2023 WL 3514455, at *7 (N.D. Tex. May 17, 2023) (Boyle, J.); *see also Comcast Corp.*, 589 U.S. at 333. Second, the Court is not convinced that the State Fair acted with discriminatory intent in refusing to allow Georgalis to sell certain food items; as Georgalis admits, some of these decisions were later reversed by the State Fair itself, belying any claim of discrimination. Doc. 4, Am. Compl., ¶ 20. Regardless, Georgalis does not identify the precise food items[3] he was prohibited from selling, the concessionaires who were allegedly allowed to sell these food items, or the food items generally sold by any such concessionaire—without such allegations, no inference of discrimination may be drawn from this instance of differential treatment. *Cf. Pullins*, 512 F. Supp. 3d at 659–60; *see also Davis v. Texas Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 455 (5th Cir. 2019). Third, while Georgalis

---

[3] To the extent Georgalis claims that the State Fair acted with anti-Greek animus in prohibiting him from selling corn dogs, *see* Doc. 4, Am. Compl., ¶ 51, the Court is not persuaded. Georgalis sold Greek food—the Court cannot say it is discriminatory for the State Fair to limit Georgalis's menu to Greek food items.

claims that other concessionaires were generally allowed to sell their booths, Georgalis's contract had terminated at the time of his desired sale. *See id.* ¶¶ 23–28. There is no allegation that *any* concessionaire was allowed to sell his booth under similar circumstances (i.e., after his contract had expired). *See Zinnah v. Lubbock State Supported Living Ctr.*, No. 5:22-CV-035-H, 2023 WL 2468746, at *2 (N.D. Tex. Feb. 15, 2023) (Hendrix, J.) ("[Plaintiff] failed to plead facts that would suggest . . . that a non-black employee received more favorable treatment than her under *similar circumstances*," (emphasis added)), *aff'd*, No. 23-10242, 2023 WL 7314350 (5th Cir. Nov. 6, 2023). Fourth, no inference of discrimination can be drawn from the fact that Georgalis was denied a second booth. Georgalis has not alleged that *any* concessionaire was ever awarded a *second* booth during the time in which Georgalis applied; instead, he only pleads that "available booths" were given to non-Greek concessionaires. *See Body by Cook*, 869 F.3d at 387 n.3. In short, Georgalis has not alleged facts which would support the inference that the State Fair ever treated him differently because of his Greek ancestry, much less that the State Fair refused to contract with him in 2023 because of his race.

For these reasons, the Court concludes that the First Amended Complaint lacks factual allegations sufficient to support a plausible inference that Georgalis's Greek ancestry was the but-for cause of the State Fair's refusal to contract. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Georgalis's § 1981 claim.

B.    *Fraud*

Georgalis also asserts a state-law fraud claim against the State Fair. Doc. 4, Am. Compl., ¶¶ 32–36. However, he failed to plead fraud with particularity as required under Federal Rule of Civil Procedure 9(b). The Court, therefore, dismisses Georgalis's claim for fraud.

Plaintiffs asserting state law fraud claims in federal court must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010). Under Rule 9(b), plaintiffs are required to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Specifically, Rule 9(b) requires plaintiffs to plead the "specif[ic] . . . statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (citations omitted).

Here, Georgalis only alleges that "[d]uring the 'Talk Back' meeting, the Fair represented . . . that [he] would return to State Fair of Texas 2023." Doc. 4, Am. Compl., ¶ 33. This allegation falls far short of what is needed under Rule 9(b). First, it does not identify who specifically made this representation to Georgalis. *See Kelly L. Firm, P.C. v. An Att'y for You*, 679 F. Supp. 2d 755, 773 (S.D. Tex. 2009) ("Plaintiffs' fraud allegations fail to specify any specific speaker making a fraudulent statement or omission."). Second, it is unclear why this statement is fraudulent. Georgalis "only alleges that certain statements . . . were made by [the State Fair], that turned out to be untrue, or were never carried out," but this does not mean there was any fraud. *See Taha v. William Marsh Rice Univ.*, No. H-11-2060, 2012 WL 1576099, at *3 (S.D. Tex. May 3, 2012). Third, it is unclear how exactly the State Fair made this allegedly false representation to Georgalis. *See Agho v. Bank of Am., N.A.*, No. 3:12-CV6-17-DPJ-FKB, 2013 WL 3471466, at *5 (S.D. Miss. July 10, 2013) ("Plaintiffs do not explain . . . how . . . any alleged misrepresentations were made."). Finally, Georgalis does "not cite one statement that was made" suggesting that the State Fair made any such representation. *Macias v. Catapult Painting, LLC*, No. CV H-19-4856, 2020 WL 6216955, at *2 (S.D. Tex. Oct. 22, 2020) (citing *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285, 291

(S.D. Tex. 2001). Because Georgalis did not plead the who, what, why, or how surrounding the alleged fraud, he had not satisfied the pleading requirements of Rule 9(b). *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Georgalis's claim for fraud.

C.    *Promissory Estoppel*

Lastly, Georgalis asserts a state-law claim for promissory estoppel. However, the First Amended Complaint lacks sufficient factual content to support a finding that the State Fair made an actionable promise to Georgalis. The Court, therefore, dismisses Georgalis's promissory estoppel claim.

"Although promissory estoppel is normally a defensive theory, it may nonetheless be asserted by a plaintiff as an affirmative ground for relief." *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 163 (Tex. App.—San Antonio 2008, pet. denied). An equitable doctrine, promissory estoppel operates to prevent "a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them." *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Under Texas law, a plaintiff must initially plead, and ultimately prove, three elements to prevail on a claim for promissory estoppel: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to [his] detriment." *Vlasek v. Wal-Mart Stores, Inc.*, No. CIV.A. H-07-0386, 2008 WL 167082, at *3 (S.D. Tex. Jan. 16, 2008).

Georgalis's promissory estoppel claim is premised on two alleged promises made by the State Fair. Doc. 4, Am. Compl., ¶ 38. First, the State Fair allegedly promised that he would return as a concessionaire for the 2023 Fair. *Id*. Second, the State Fair allegedly promised that he would be given a second booth for the 2023 Fair. *Id*. However, the First Amended Complaint does not

clearly identify how the State Fair made either alleged promise. At one point, Georgalis pleads that "Melanie Linnear and Callie Nollen made statements asserting that the Plaintiffs were going to be included in State Fair of Texas 2023 and would be provided with an additional booth at the Fair." *Id.* at ¶ 40. This allegation would seem to suggest that the State Fair expressly made the promises that Georgalis alleges. But Georgalis also alleges that the State Fair's mere "conduct towards [him] indicated a promise made to return . . . [Georgalis] to the . . . 2023 [Fair] and a promise for a second booth location." *Id.* ¶ 38. And later in the First Amended Complaint, he pleads that the State Fair "should have foreseen that Plaintiffs would interpret a request to complete an application for State Fair of Texas 2023 as a guarantee and assurance that Georgalis was going to have a booth at the Fair. . . . [and] . . . the added request by the Fair to complete and sign an application for a second booth, was likewise a guarantee." *Id.* ¶ 43. While it is not entirely clear, on this Court's reading of the First Amended Complaint, Georgalis is claiming that, by requesting he fill out two applications, the State Fair promised Georgalis that he would return to 2023 Fair and that he would have a second booth. *Id.* ¶¶ 38, 40, 43.

Georgalis pleads no facts about the State Fair's application process to permit the inference that the State Fair's request that Georgalis fill out an application was a sufficiently definite promise to support a claim for promissory estoppel. "As the descriptive title of the cause of action itself connotes the existence of a promise is a *sine qua non* of a promissory estoppel claim." *Temple v. Am. Airlines, Inc.*, No. 3-99-CV-2289-AH, 2001 WL 1012683, at *3 (N.D. Tex. Aug. 17, 2001) (Sanderson, M.J.). "[T]he asserted 'promise' must be sufficiently specific and definite that it would be reasonable and justified for the promisee to rely upon it as a commitment to future action." *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Promises conditioned on future events generally are not sufficiently definite to support a

claim for promissory estoppel. *See e.g., Davis v. Texas Farm Bureau Ins.*, 470 S.W.3d 97, 108 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (offer of settlement was contingent on offeree's future acceptance and thus did not constitute an "actual promise"); *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 301 (5th Cir. 2010) ("[S]tatements of an intention to reach agreement have been found too vague and indefinite to survive summary judgment on promissory estoppel."). Here, the State Fair's requests that Georgalis fill out an application, at most, invited Georgalis to make an offer, which the State Fair could then accept or reject. *Cf. Republic Nat. Life Ins. Co. v. Hall*, 232 S.W.2d 697, 700 (Tex. 1950); *Brownwood Benev. Ass'n v. Maness*, 30 S.W.2d 1114, 1115 (Tex. App.—Eastland 1930, writ. ref'd); *Urb. Elec. Servs., Inc. v. Brownwood Indep. Sch. Dist.*, 852 S.W.2d 676, 678 (Tex. App.—Eastland 1993, no writ). Any promise made by the State Fair was conditioned on Georgalis's completion of the applications and the State Fair's subsequent approval of those applications. *See Davis*, 470 S.W.3d at 108.[4] Without more, the State Fair's invitation to apply reflects only "the indefinite assurance of an ongoing negotiation process, rather than a commitment to perform specific acts, and do[es] not evidence a definite promise." *Addicks Servs.*, 596 F.3d at 301. Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Georgalis's claim for promissory estoppel.

---

[4] The Court also notes that the State Fair only provided Georgalis with an application for a second booth upon Georgalis's request. *See* Doc. 4, Am. Compl., ¶ 24. The Court is hesitant to place any significance on the State Fair's supplying an application under these circumstances. Moreover, Georgalis should have been aware that merely being provided an application for a second booth did not guarantee he would be given a second booth considering he submitted numerous applications for an additional booth in the past, which were uniformly denied. *Id.* ¶ 50.

## IV.

## CONCLUSION

For these reasons, the Court concludes that Georgalis has failed state a claim for race discrimination under § 1981, fraud, or promissory estoppel. Therefore, the Court **GRANTS** the State Fair's Motion and **DISMISSES** the First Amended Complaint **WITHOUT PREJUDICE**. Should Georgalis elect to file an amended complaint, he must do so within twenty-one (21) days from the date of this Order.

**SO ORDERED.**

**SIGNED:** May 30, 2024.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-17-